**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JAMES WELTER, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| CONNECTICUT HOUSING | : | |
| FINANANCE AUTHORITY | : | |
| | : | |
| Defendant. | : | JULY 21, 2021 |
| | : | |

**COMPLAINT**

**JURISDICTION AND VENUE**

1. This action arises under the Family Medical Leave Act (FMLA), 29 U.S.C.A. § 2615, and § 2612; the Americans with Disabilities Act Amendments Act (ADAAA), 42 U.S.C. § 12101 et seq; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; Connecticut General Statues § 46A-60(b)(1); and Connecticut State Law.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims are invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. §1988.

-1-

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. The Plaintiff received a Notice of Right to Sue on May 4, 2021.

7. Plaintiff received a Release of Jurisdiction on April 28, 2021.

## PLAINTIFF

8. The Plaintiff, James Welter ("Plaintiff" or "Welter") resides at 51-1 Mile Creek Road, Old Lyme, CT 06371.

## DEFENDANT

9. The Defendant, Connecticut Housing Finance Authority ("Defendant" or "CHFA") conducts substantial business in Connecticut at 999 West Street, Rocky Hill, CT 06067, where Plaintiff was employed.

10. Defendant employs more than twenty (20) employees.

## FACTUAL ALLEGATIONS

11. Mr. Welter was born on March 21, 1970.

12. Mr. Welter was 50 years of age at all times relevant.

13. Welter was one of the oldest employees in his department.

14. Approximately one-half of Defendant's employees were younger than Mr. Welter.

   **A. Mr. Welter's History of Extraordinary Performance.**

15. Mr. Welter was hired as a Multifamily Mortgage Underwriter for CHFA in March 2013.

16. Six months later, due to his outstanding performance and valuable skill set, Mr. Welter was promoted to Senior Mortgage Underwriter, which was subsequently referred to as Multifamily Mortgage Underwriter II.

17. Mr. Welter always performed the duties of his positions in a greater than satisfactory manner.

### B. Triggering Action, Leading to Pretextual Event.

18. Yet, unfortunately, in 2015, Mr. Welter's work environment turned into a hostile one, due to the actions of Jennifer Landau, ("Landau") (female, late 40s), Mr. Welter's Supervisor and later the Managing Director for CHFA Masouda Omar, ("Omar"), (female, late 40s), who served as Landau's supervisor.

19. The substantially younger females, Omar and Landau, engaged in a pattern of "severe and pervasive" conduct, altering the conditions of Mr. Welter's employment, generating a harassing and abusive work environment.

20. Specifically, once Landau was assigned as Mr. Welter's new Supervisor, the hostility and harassment became even more unbearable for Mr. Welter, which was later endorsed by Omar.

21. For instance, in mid-2018, Mr. Welter was involuntarily reassigned to perform the job of an Asset Manager 1, which was effectively a demotion.

22. Welter was not provided any reason for this reassignment and clearly expressed, verbally, and in writing, that he did not want this newly assigned position.

23. Seemingly, with the benefit of contextual hindsight, this reassignment was intended as a deliberate effort to induce Mr. Welter to resign from his position.

24. The disastrous chain of events continued with CHFA's refusal to provide Mr. Welter with the proper training for the Asset Manager 1 position he now occupied.

25. Mr. Welter was neither provided training nor guidance from CHFA management for performing his new and entirely unfamiliar asset management duties.

26. Demonstrating without a doubt that Mr. Welter was set up for failure and the most effective formula to terminate his employment as quickly as possible or in an effort to induce him to resign, was to hold him accountable for mistakes proximately caused by CHFA's own lack of training.

27. Desperate to obtain the proper training to perform the duties of his position, Mr. Welter continuously complained to his younger, female supervisor, Landau, and requested training as any other employee beginning a new position would have.

28. As a sole result of his ceaseless petition, Mr. Welter was finally allowed to attend professional training.

29. As a consequence of the hard work and excellent performance during his training, Mr. Welter obtained two new professional certifications—Certified Occupancy Specialist (COS) and Certified Credit Compliance Professional (C3P), the former being awarded due to Mr. Welter's passing the training program at an extremely high level (90th percentile).

30. Nonetheless, despite his outstanding performance, Landau issued Mr. Welter a poor performance review for 2018 in furtherance of Defendant's plot or scheme to get him terminated.

31. Given the nonsensicality, lack of objectivity, and harassing nature of this deliberately poor evaluation, Mr. Welter wrote a rebuttal as permitted under the provisions of the Employee Handbook and Connecticut General Statutes.

32. Nevertheless, Mr. Welter was still treated disparately and disregarded by upper management.

33. In 2019 new management took control over CHFA, but Landau remained Mr. Welter's Supervisor, and her harassment persisted.

34. Once again, on April 13, 2020, despite Welter's good performance, he was given another poor performance review for 2019 by Landau—his second consecutive poor evaluation by her.

35. Calling into question the veracity of her evaluation, <u>out of the twenty-five categories, Mr. Welter scored as "needs improvement" in only four them</u>, and incomprehensibly the explanations for this score were not supported by accurate facts, feedback given during the year, or any other documented progressive discipline required by policy.

36. Mr. Welter received a positive evaluation on twenty-one out of the twenty-five categories on his performance review. Yet, inexplicably he was given an overall poor score for his 2019 performance review.

37. Unable to deal with the hostility, on April 21, 2020, Mr. Welter contacted Maura Martin ("Martin") Human Resources, to complain about his 2019 performance review and specifically pointing out that his review had included multiple generalities and, when Welter inquired, neither Landau nor Omar was able to provide specifics to support the poor review.

38. Welter expressed that he felt that the review process was subjective, arbitrary, and unfair, and he thought that it needed to be replaced.

39. In response, Martin suggested to Welter that he should document his complaints in writing, which Welter then included in his written rebuttal to his 2019 performance review.

40. Without hesitation, on May 1, 2020, Mr. Welter submitted his written rebuttal to his 2019 performance review to the all-female and younger members of management, i.e. Landau, and Omar.

41. Clearly, the two poor reviews unfairly issued to Mr. Welter were the only possible way for CHFA to achieve its ultimate goal to get his employment terminated, given the newly instituted policy, according to which, two subsequent negative annual reviews could result in termination.

42. Tellingly, in what only could be considered retaliation—on May 14, 2020—approximately two weeks after Mr. Welter's rebuttal to the erroneous and biased performance review he was given for the second year in a row, the undoubtful retaliatory response from CHFA took the form of formal termination.

43. The younger females Landau and Omar's discriminatory state of mind and scheme put in place to end Mr. Welter's outstanding career at CHFA shows that his age and gender were really the reasons for his termination and the reasons why CHFA bypassed the progressive discipline process that it should have followed according to the Employee Handbook.

44. Particularly troublesome is that Mr. Welter was terminated by an Executive Director, Nandini Natarajan, ("Natarajan"); Managing Director Omar; and Director Landau; all of whom appear to be younger, and all of whom are female.

45. With an utter lack of verbal, written warnings, or any kind of disciplinary fault on Mr. Welter's behalf, CHFA outrageously made use of the only resource that could have been conveniently tailored to meet CHFA's goal to terminate Mr. Welter's employment—performance reviews.

THE McMINN EMPLOYMENT LAW FIRM, LLC

46. CHFA management's biased reviews, in which the evaluations made are vague, subjective, and highly prejudiced were used as erroneous, concocted reasons to terminate Mr. Welter's employment.

### C. FMLA Retaliation.

47. In addition, Welter was approved for job-protected FMLA to undergo surgery on his left shoulder torn rotator cuff beginning on November 20, 2019, returning to work on January 20, 2020.

48. Such leave was approved by CHFA's HR department, but given the harassment to which Mr. Welter was subsequently subjected, and his subsequent termination a mere sixteen weeks later, it appears that CHFA management engaged in malicious retaliation against Mr. Welter for taking such leave.

### D. Harassment and Hostile Work Environment.

49. Mr. Welter underwent a severe and pervasive hostile work environment in which he was subjected to a myriad of misconduct that runs the gamut from directly harassing him regarding deadlines and causing his work to back up from lack of network access to literally denying him the access to the network and equipment necessary to perform the duties of his position remotely as it was necessary during the COVID-19 lockdown.

50. Mr. Welter was pointedly told by one of the Information Technology Representatives, "there are no laptops" available when he inquired about the necessary equipment to perform his job remotely from home on March 16, 2020.

51. Nonetheless, Mr. Welter, a team-player to the core, highly committed to completing all his work assignments that would fall behind due to the refusal of CHFA to provide

him with the proper work equipment, decided to risk his own health and worked from the office on more than one occasion during the pandemic.

52. Finally, on April 1, 2020, Mr. Welter was provided with a company laptop.

53. Of significant note, an IT representative informed Mr. Welter that he was the last CHFA staff member to receive a laptop and that management had created a list for who was to get laptops in order of priority—Welter was dead last on this list.

## COUNT ONE

### GENDER AND SEX DISCRIMIANTION, IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

54. Plaintiff hereby incorporates Paragraphs 1-53 with the same force and impact as if fully set forth herein.

55. Defendant employs more than fifteen employees.

56. Plaintiff was qualified for his position.

57. Plaintiff is a male.

58. Plaintiff was subjected to outward harassment and hostility, by female employees, who treated him disparately by, among other things,

    a. In mid-2018, involuntarily reassigning Mr. Welter to perform the job of an Asset Manager 1, a demotion.

    b. Failing to provide Mr. Welter with the proper training for the Asset Manager 1 position

    c. Holding Mr. Welter accountable for mistakes proximately caused by CHFA's own lack of training.

-8-

    d. Landau issuing Mr. Welter an unwarranted poor performance review for 2018.

    e. Directly harassing Mr. Welter regarding deadlines and causing his work to back up from lack of network access to literally denying him the access to the network and equipment necessary to perform the duties of his position remotely as it was necessary during the COVID-19 lockdown.

    f. Telling Mr. Welter, "there are no laptops" available when he inquired about the necessary equipment to perform his job remotely from home on March 16, 2020.

    g. On April 13, 2020, issuing Mr. Welter another poor performance review for 2019— by Landau—his second consecutive poor evaluation by her in a row.

59. Aside from the outward disparate treatment, the Plaintiff suffered numerous adverse employment actions, including, but not limited to, the following:

    a. On May 14, 2020—approximately two weeks after Mr. Welter's rebuttal to the erroneous and biased performance review he was given for the second year in a row, CHFA terminated his employment.

60. The above prescribed discriminatory actions were taken against the Plaintiff because he male.

61. Defendant's conduct is unlawful and in violation of Title VII.

62. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress, and the ability to enjoy life's pleasures.

63.  Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## COUNT TWO

### RETALIATION,
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

64.  Plaintiff hereby incorporates Paragraphs 1-53 with the same force and impact as if fully set forth herein.

65.  Defendant employs more than fifteen employees.

66.  Plaintiff was qualified for his position.

    a. On April 21, 2020, Plaintiff engaged in protected activity by complaining to Human Resources.

67.  In retaliation, on May 14, 2020—approximately two weeks after Mr. Welter's rebuttal to the erroneous and biased performance review he was given CHFA terminated his employment.

68.  The above prescribed actions were motivated by retaliation.

69.  Defendant's conduct is unlawful and in violation of Title VII.

70.  As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress, and the ability to enjoy life's pleasures.

71.  Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## COUNT THREE

### DISABILITY DISCRIMINATION,
### IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDEMENTS ACT

72. Plaintiff hereby incorporates Paragraphs 1-53, with the same force and impact as if fully set forth herein.

73. Due to his disability, Plaintiff underwent surgery on his left shoulder torn rotator cuff beginning on November 20, 2019, returning to work on January 20, 2020.

74. Sixteen weeks after his disability leave, on May 14, 2020, CHFA terminated Mr. Welter's employment.

75. CHFA's termination of Mr. Welter was motivated by his disability.

76. As a result of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

77. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT FOUR

### RETALIATION,
### IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT

78. Plaintiff incorporates paragraphs 1-53, with the same force and impact as if fully set forth herein at length.

79. Plaintiff underwent surgery on his left shoulder torn rotator cuff beginning on November 20, 2019, returning to work on January 20, 2020.

80. In retaliation for taking leave, in short temporal proximity, sixteen weeks later, on May 14, 2020, CHFA terminated Mr. Welter's employment.

81. CHFA's termination of Mr. Welter was motivated by his disability.

82. As a result of his wrongful discharge, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

83. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT FIVE

## RETALIATION, FOR EXERCISING FMLA RIGHTS IN VIOLATION OF 29 U.S.C. § 2612(A)(1)

84. Plaintiff hereby incorporates paragraphs 1-53 with the same force and impact as if fully set forth herein.

85. Plaintiff was entitled to FMLA leave due to his shoulder disability, a qualifying serious health condition.

86. Defendant approved the Plaintiff's FMLA leave and he underwent surgery on his left shoulder torn rotator cuff beginning on November 20, 2019, returning to work on January 20, 2020.

87. In retaliation for taking job-protected leave, in short temporal proximity, sixteen weeks later, on May 14, 2020, CHFA terminated Mr. Welter's employment.

88. The Defendant's retaliation for Plaintiff asserting her FMLA rights, includes, but is not limited to, terminating Plaintiff's employment on May 14, 2020.

89. The Defendant committed an adverse employment action against Plaintiff due to his

engagement in protected activities.

90. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages, including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

91. Plaintiff is seeking damages as a result of Defendants' unlawful conduct.

## COUNT SIX

### AGE DISCRIMIANTION,
### IN VIOLATION OF CONN. GEN. STAT. § 46A60(B)(1)

92. Plaintiff hereby incorporates Paragraphs 1-53 with the same force and impact as if fully set forth herein.

93. Defendant employs more than two employees.

94. Plaintiff was qualified for his position.

95. Plaintiff, was 50 years of age at all times relevant.

96. CHFA treated Plaintiff disparately, via its younger employees. For instance, Landau, (late 40s), Mr. Welter's Supervisor and later the Managing Director for CHFA Masouda Omar, (late 40s), treated Plaintiff with hostility and in a disparate manner, by, among other things,

    a. In mid-2018, involuntarily reassigning Mr. Welter to perform the job of an Asset Manager 1, a demotion.

    b. Failing to provide Mr. Welter with the proper training for the Asset Manager 1 position

   c. Holding Mr. Welter accountable for mistakes proximately caused by CHFA's own lack of training.

   d. Landau issuing Mr. Welter an unwarranted poor performance review for 2018.

   e. Directly harassing Mr. Welter regarding deadlines and causing his work to back up from lack of network access to literally denying him the access to the network and equipment necessary to perform the duties of his position remotely as it was necessary during the COVID-19 lockdown.

   f. Telling Mr. Welter, "there are no laptops" available when he inquired about the necessary equipment to perform his job remotely from home on March 16, 2020.

   g. On April 13, 2020, issuing Mr. Welter another poor performance review for 2019— by Landau—his second consecutive poor evaluation by her in a row.

97. Aside from the outward disparate treatment, the Plaintiff suffered numerous adverse employment actions, including, but not limited to, the following:

   a. On May 14, 2020—approximately two weeks after Mr. Welter's rebuttal to the erroneous and biased performance review he was given for the second year in a row, CHFA terminated his employment.

98. The above prescribed discriminatory actions were motivated by the Plaintiff's age.

99. Defendant's conduct is unlawful and in violation of Conn. Gen. Stat. § 46a60(b)(1).

100. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages,

fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress, and the ability to enjoy life's pleasures.

101. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## COUNT SEVEN

### RETALIATION,
### IN VIOLATION OF IN VIOLATION OF CONN. GEN. STAT. § 46A60(B)(4)

102. Plaintiff hereby incorporates Paragraphs 1-53 with the same force and impact as if fully set forth herein.

103. On April 21, 2020, Plaintiff engaged in protected activity by complaining to Human Resources.

104. In retaliation, on May 14, 2020—approximately two weeks after Mr. Welter's rebuttal to the erroneous and biased performance review he was given CHFA terminated his employment.

105. The above prescribed actions were motivated by retaliation.

106. Defendant's conduct is unlawful and in violation of § 46a60(b)(4).

107. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress, and the ability to enjoy life's pleasures.

108. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

**PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1. Money damages;

2. Costs;

3. Punitive damages, attorney fees, and expert witness fees;

4. Pre-judgment interest

5. Trial by jury; and

6. Such other relief as the Court deems just, fair, and equitable.


        THE PLAINTIFF,
        JAMES WELTER


By: _____/s/_____
    Michael C. McMinn (#*ct27169*)
    **THE MCMINN EMPLOYMENT LAW FIRM, LLC**
    1000 Lafayette Blvd., Suite 1100
    Bridgeport, CT 06604
    Tel: (203) 683-6007
    Fax: (203) 680-9881
    michael@mcminnemploymentlaw.com

    *COUNSEL FOR PLAINTIFF*